IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN FANARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 12-CV-924-WHA |
| | ) | [WO] |
| SHERIFF FRANKLIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Plaintiff resided at the Elmore County Jail in Wetumpka, Alabama in May, June, and July of 2011 as a federal holdover inmate awaiting transfer to a relocating facility. He filed this 42 U.S.C. § 1983 complaint on October 22, 2012, challenging the conditions of confinement to which he was subjected during his incarceration at the county jail.[1] This action proceeds on Plaintiff's amended complaint filed on November 7, 2012, against Sheriff Bill Franklin, Warden Robert Henline, Sargent James Stroud, Corrections Officer Joseph Womble (incorrectly identified as Officer Joseph Wamball), Corrections Officer Trent Edwards, former Sergeant Clint Evans, and former Corrections Officer Chris Hall. Plaintiff requests punitive damages for alleged violations of his constitutional rights, future medical expenses, psychology therapy expenses, legal fees, an evidentiary hearing, and a trial.  *See Doc. No. 4*.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief.  In these documents, Defendants argue that this case is due to be dismissed because, prior to filing this cause of action, Plaintiff failed to exhaust an administrative remedy available to him at the Elmore County Jail regarding the claims in the

---

[1] At the time he filed his complaint, Plaintiff was incarcerated at the Federal Correctional Institution in Morgantown, West Virginia.

complaint. *Doc. No. 41* at 13-15. Defendants base their exhaustion defense on Plaintiff's failure to file a grievance regarding the claims in this action. *Id*.

The court provided Plaintiff an opportunity to file a response to Defendants' report in which he was advised to "specifically address Defendants' argument that he [] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). *Doc. No. 43* at 1 (footnote omitted). Plaintiff filed a response. *See Doc. Nos. 44, 46, 47, 48.*

"[A]n exhaustion defense ... is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dept. of Corrections*, 587 Fed. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant'' "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies...."). Therefore, the court will treat Defendants' report as a motion to dismiss.

## II.  STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e regarding exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id*. (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before filing suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's

amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison ... must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983"); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001). The Court has, therefore, determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 Fed. App'x 364, 366 (11th Cir. 2012).  The court will "resolve this issue first." *Id*.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir.2008) (*citing Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id*. (*citing Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 Fed. App'x at 366.  A district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. *See [Turner*, 541 F.3d at 1082].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits,

and the parties have a sufficient opportunity to develop the record.  *Bryant*, 530 F.3d at 1376."
*Trias*, 587 Fed. App'x at 535.

Upon review of the complaint, Defendants' special report, the evidentiary materials filed in support thereof, and Plaintiff's responses, the court concludes that Defendants' motion to dismiss is due to be granted.

### III. DISCUSSION

Plaintiff challenges various conditions of his confinement while incarcerated at the Elmore County Jail in May, June, and July of 2011.  Defendants deny Plaintiff's allegations and maintain that this case is subject to dismissal because Plaintiff failed to exhaust the administrative remedy provided at the Elmore County Jail prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *Doc. No. 41, Henline Affidavit, Exh. K*.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal

court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325; *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings....  Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91, 93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her. *Id*. at 83-84; *Bryant,* 530 F3d at 1378 (quoting *Johnson v. Meadows*, 418 F3d 1152, 1158 (11th Cir. 2005) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); *Johnson*, 418 F.3d at 1157 (inmate who files an untimely grievance or spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed. Appx. 81, 83 (11th Cir. 2012) (per curiam).

It is undisputed that the Elmore County Jail provides an administrative remedy for inmate complaints in the form of an inmate grievance procedure. *Doc. No. 41,  Henline Affidavit, Exh. K.* The grievance procedure allows an inmate to submit grievances to jail personnel regarding matters occurring during their incarceration at the jail. The relevant portion of the grievance procedure states:

> SECTION 13: GRIEVANCES
>
> The purpose of this policy is to provide inmates of this facility with the ability to bring legitimate complaints and concerns to the attention of the jail staff so that corrective action may be taken where warranted.
>
> It is the policy of the Elmore County Jail that all inmates have the individual ability to bring complaints, concerns, and other issues to the attention of the jail staff. An inmate with a complaint, concern, or other issue regarding any aspect of his or her incarceration is encouraged and expected to bring the matter to the attention of the jail staff. All members of the jail staff receiving grievances are charged with handling them in the manner set forth in the grievance procedure. An inmate filing a grievance or appealing a grievance will not be retaliated against for filing a grievance.
>
> Procedure:
>
> Ordinarily, grievances are to be made in writing. An inmate with a grievance may request a grievance form (see Appendix A) from any member of the jail staff. The staff member shall provide on[e] copy of the grievance form to the inmate and take it back from the inmate after a reasonable amount of time has elapsed for the inmate to complete the form. Grievances may be filed on a request form. All grievances must be filed within fourteen days[] of the incident complained of.
>
> Where a grievance is of an emergency nature, it may be made orally to any staff member. A grievance is an "emergency" when the subject of the grievance, if left un-addressed, has a strong likelihood of resulting in a breach of security, serious physical harm to any person; and/or serious harm to the health of any person. The determination of whether an inmate's complaint is an emergency is left to the discretion of the staff member responding to the grievance. As with a written grievance, the staff member receiving an[] emergency oral grievance will attempt to address the problem at his or her level. If the staff member cannot address the oral grievance, he or she shall elevate the grievance to the next person in the chain of command until it reaches a staff member with the appropriate authority to address the grievance. Once the grievance is addressed, the staff member making the final decision shall document in the inmate's file the following information:

(a) date and time the grievance was made; (b) description of the grievance; (c) action taken if any by the staff member; (d) date and time the inmate was informed of the action taken, if any. The staff member addressing the grievance will sign this document.

When more than one inmate has the same grievance (e.g. temperature in the cell block), each inmate is to submit his or her own grievance. Group grievances are unacceptable.

If an inmate is unsatisfied with the response to his written or oral grievance, he or she may appeal the decision as follows:

> a. **Grievance responded to by any member of the jail staff other than the jail administrator**. The inmate must, within 24 hours, submit a written appeal to the jail administrator on a separate grievance form. The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, and the action the inmate wishes the jail administrator to take. Upon receipt of an appeal, the jail administrator shall determine whether the appeal has merit and take the action, if any, which is appropriate. Regardless of the decision, the jail administrator shall inform the inmate of the decision. The jail administrator shall document in the inmate's jail file the appeal decision along with the date and time the inmate was notified. The jail administrator will sign this document. If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Chief Deputy as set forth in the next paragraph.

> b. **Grievance responded to by the jail administrator or appeal of an appeal to the jail administrator**. The inmate must, within 24 hours of the jail administrator's decision, submit a written appeal to the Chief Deputy on a separate grievance form. The appeal must state the nature of the grievance, the action taken, if any, by the jail staff and/or jail administrator, and the action the inmate wishes the Chief Deputy to take. Upon receipt of an appeal, the Chief Deputy shall determine whether the appeal has merit and take the action, if any, which is appropriate. Regardless of the decision, the Chief Deputy shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff delegated to inform the inmate of the Chief Deputy's decision. A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified. The Chief Deputy will sign this document. If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Sheriff as set forth in the next paragraph.

> c. **Appeal to the Sheriff**. The final appeal of a grievance is the Sheriff. The inmate must within 24 hours of a decision by the Chief Deputy,

submit a written appeal to the Sheriff on a separate grievance form. The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, Jail Administrator, and/or Chief Deputy and the action the inmate wishes the Sheriff to take. Upon receipt of an appeal, the Sheriff shall determine whether the appeal has merit and take the action, if any, which is appropriate. Regardless of the decision, the Sheriff shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff delegated to inform the inmate of the Sheriffs decision. A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified. The Sheriff or his designated representative will sign this document.

d. Delegation of appeal authority. The Sheriff, at his discretion, may designate any member of the Sheriff's Department that has not already made a decision regarding the inmate's grievance to act in lieu of the persons designated in paragraphs 6a-6c.

7. Under no circumstances will any member of the jail staff retaliate against an inmate simply because the inmate filed a grievance or appealed a grievance decision.

*Doc. No. 41, Exh. K.*

The record establishes that the Elmore County Jail provides an administrative remedy procedure for prisoner complaints which is available to all inmates, including Plaintiff during his confinement at the facility during the relevant time period. Plaintiff does not challenge the availability of a grievance procedure at the Elmore County Jail. The grievance procedure allows an inmate to file a grievance addressing actions occurring or conditions present in the facility by submitting an inmate request form and/or grievance form stating the basis for the grievance. Defendants maintain that they received two inmate request forms from Plaintiff regarding his requests to speak with his attorney and his desire to speak with someone about his "issues" with being at the jail, and his request for an indigent pack containing paper, a pen, and stamped envelopes. *Doc. No. 41, Exh. B, Exh. G.* Jail personnel responded to these requests. *Id.* Defendants' evidence reflects that Plaintiff filed no appeal of the response he received to these grievances. *Id.*

8

Regarding his failure to file a grievance in accordance with the grievance procedure, Plaintiff argues that he filed written requests and made verbal requests to talk to someone about the conditions at the jail to the extent that Defendants Womble, Stroud, and Hall "made threats" which caused "him to fear [for] his safety and retaliation" and "ma[de] any further attempts to exhaust administrative remedies unavailable." *Doc. No. 44* at 1. Plaintiff further contends that Defendants have possession of evidence "such as request-grievance forms that [he] submitted to the defendants during his incarceration requesting" access to a phone to contact his attorney, transfer to a different location in the jail, addresses for the A.C.L.U. and this court, and contact by jail staff on his behalf with the Bureau of Prisons. *Doc. No. 47* at 4.  Plaintiff states that most requests were returned to him signed by the jail administrator, and these reflect his attempts to follow the "provisions of 42 U.S.C. § 1997e(a)." *Id.* Although Plaintiff's and Defendants' allegations conflict, Plaintiff's allegations that he was impeded in his effort to exhaust administrative remedies and/or he attempted to comply with the jail's grievance procedure are assumed to be true for purposes of this Recommendation. *Turner v. Burnside, supra*.

The court turns to the second *Turner* step at which Defendants bear the burden of establishing a lack of exhaustion. Defendants' evidence establishes that the Elmore County Jail provides a procedure for inmates who wish to submit a grievance regarding conditions at the Elmore County Jail. Inmate request and grievance forms are available to prisoners at the jail,[2] inmate grievances are investigated and answered, and if the inmate is dissatisfied with the response he or she receives, the inmate may submit a written appeal to the jail administrator. If an inmate is not satisfied with the outcome of the appeal he or she may appeal in writing to the

---

[2] The inmate handbook states that inmate request forms may be used as grievance forms by writing "grievance form" at the top of the form. *Doc. No. 41, Exh. K.*  Defendants' dispositive motion reflects that Plaintiff did not include this written notation on the inmate request forms he submitted to jail personnel. *Id. at Exh. B*

Chief Deputy of the jail. If an inmate is not satisfied with the outcome of the appeal to the Chief

Deputy, he or she may appeal the Chief Deputy's decision to the Sheriff who represents the final

recourse in the grievance appeal process. *Doc. No. 41, Exh. K.*

Plaintiff's evidence has not successfully rebutted this showing that an administrative

remedy process was available at the Elmore County Jail during the time of his incarceration. His

conclusory representations that the grievance process at the Elmore County Jail was not truly

available under § 1997e(a) because of threats made by Defendants Stroud, Womble, Hall, and/or

Evans in response to his verbal and written requests, which caused him to fear for his safety and

fear possible retaliation, and/or because of their refusal to accept his inmate request forms, are

insufficient. *Doc. Nos. 4, 44.* While a prison official's "serious threats of substantial retaliation

against an inmate" for lodging a grievance can "make the administrative remedy 'unavailable,'

and, thus, lift the exhaustion requirement," two conditions must be met. *Turner*, 541 F.3d at

1085.  First, the threat must actually deter the inmate from filing a grievance "or pursuing a

particular part of the process," and, second, the threat must be "one that would deter a reasonable

inmate  of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the

grievance process that the inmate failed to exhaust." *Id.* Plaintiff's conclusory allegations that he

failed to exhaust his remedies because of "threats" and/or a failure to accept the forms do not

satisfy this standard. *Williams v. Barrow*, 559 Fed. Appx. 979, 987–88 (11th Cir. 2014) (finding

inmate's conclusory allegation that "escalating retaliation" prevented him from exhausting his

grievance remedies insufficient to avoid dismissal for lack of exhaustion); *Kozuh v. Nichols*, 185

Fed. Appx. 874, 877–78 (11th Cir. 2006) (dismissing prisoner's complaint on exhaustion

grounds because there was no evidence from the inmate to support his arguments he was

thwarted by threats from bringing his grievances and that prison officials failed to respond to his

grievances).

Here, Plaintiff has identified no specific threats to his safety or acts of retaliation that

dissuaded him from exhausting the grievance process. He proffers only conclusory and

unsupported allegations of a general fear for his safety or of retaliation and a refusal by jail

personnel to accept his grievance requests. Notwithstanding the latter assertion, Plaintiff

contends that Defendants have a "substantial amount of evidence ... such as request-grievance

forms" which he submitted (and which he asserts are in Defendants' possession) and which

were returned with the jail administrator's signature. This, he claims, reflects his "attempt" to

comply with the exhaustion requirement found in § 1997e(a).  *Doc. No. 47* at 4.  Defendants'

evidence, however, establishes that Plaintiff had available administrative remedies to exhaust his

claims at the Elmore County Jail, but he failed to exhaust those remedies in accordance with the

facility's grievance procedure. *Doc. No. 41, Exhs. B, G, K. See Woodford*, 548 U.S. 84-851 (to

exhaust administrative remedies, an inmate must comply with all steps prescribed by the jail's

grievance system); *see also Twitty v. McCoskey,* 226 Fed. Appx. 594, 596 (7th Cir. 2007) (inmate

failed to avail himself of the administrative remedies which existed to redress his claims where

he made his complaints "outside the channels of the [jail's formal] grievance procedure."); *see*

*also Brewington v. Daniels*, 2012 WL 6005780 *4-5  (M.D. Ala. 2012) (inmate's conclusory

assertion that he complied with grievance procedures but  medical staff failed to timely respond

to his initial medical grievance insufficient to overcome defendants' evidence showing that a

grievance system was available for Plaintiff's claims); *Maclary v. Carroll*, 142 Fed. Appx. 618,

620 (3rd Cir. 2005) (inmate's unsupported conclusory allegations he filed grievances which went

unanswered and unprocessed were insufficient to overcome defendants' evidence he failed to exhaust available administrate remedies).

The court has carefully reviewed the pleadings, documents, and records and concludes that Plaintiff failed to exhaust administrative remedies regarding the claims presented in this action and/or failed to demonstrate he was denied access to those administrative remedy procedures. *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). The pleadings filed by Plaintiff further establish that he was incarcerated at a federal correctional institution when he filed this cause of action. It is, therefore, clear that Plaintiff's access to the administrative remedy provided by Defendants is no longer available to him. The court, therefore, concludes that Plaintiff's complaint is subject to dismissal with prejudice, as he failed to exhaust properly an administrative remedy available to him which is a precondition to proceeding in this court on this claim. *Woodford*, 548 U.S. at 87–94; *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157;  *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable).  Defendants' motion to dismiss for failure to exhaust is due to be granted.  *Woodford*, 548 U.S. at 87-94.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion to dismiss (*Doc. No. 41*) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy available to him at the Elmore County Jail prior to initiating this cause of action.

2.  This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a) for Plaintiff's failure to properly exhaust an administrative remedy  available to him at the Elmore County Jail.

3. No costs be taxed.

It is further

ORDERED that **on or before February 3, 2016**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 20th day of January, 2016.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE